STATE of Missouri,
Plaintiff-Respondent,

v.

Bryan T. REED, Defendant-Appellant.

No. 39080.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 27, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court June 15, 1979.

J. Justin Meehan, Howard, Singer & Meehan, Morris A. Shenker, Jeffrey J. Shank, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, John M. Morris, III, Brenda Farr Engel, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Edwin Rodgers, Asst. Circuit Atty., St. Louis, for plaintiff-respondent. .

DOWD, Presiding Judge.

Bryan Timothy Reed was found guilty by a jury of murder in the second degree and sentenced to 10 years imprisonment. In his appeal from the judgment entered on the verdict, Reed alleges that the trial court erred in four respects.

Among the points relied on is the contention that the trial court erred in overruling appellant's motion for judgment of acquittal because the evidence was insufficient to sustain the verdict. Our review of this issue is confined to a consideration of all the direct and circumstantial evidence found in the record which tends to prove the defendant's guilt, and from which all reasonable inferences in favor of the State are to be drawn. *State v. Allen,* 555 S.W.2d 36 (Mo.App.1977). Our review of the record causes us to find that the verdict is supported by the evidence.[1]

Reed was charged with the murder of Earl Robinson which allegedly occurred during a fight concerning a woman at a party on March 13, 1976. The evidence adduced at trial regarding the inception of the altercation is conflicting. The record reveals that a dispute arose when a person in attendance at the party, Johnny Fleming, expressed interest in dancing with a particular woman. It is unclear if the argument involved Fleming and the appellant or Fleming and the appellant's brother, Carlos. In any event, Fleming enlisted the aid of his friends, one of whom was Earl Robin-

---

1. Appellant review pursuant to the plain-error rule is not precluded by this finding because we do not regard the evidence which was introduced against the appellant to have been overwhelming.

son, to meet the resistance. The agitation was continued outside the home which had been the site of the party.

The State introduced two witnesses who testified to having seen the shooting. One witness, Wendy Webb, viewed the shooting which took place in the backyard, from a kitchen window. While Ms. Webb admitted that she did not see the appellant with a gun, she testified to having seen flashes of light issue from the appellant causing Earl Robinson to collapse.

Another witness, Roy Jenkins, testified that he viewed the shooting from the doorway in the back of the house. He recollected that Earl Robinson took a swing at one of the appellant's friends who was outside the house. Jenkins testified that the appellant then fired three shots at Robinson from the right hand corner of the house. Following Robinson's collapse, the appellant and his friends fled the scene. Robinson died approximately one hour after the shooting.

█ There is sufficient evidence in the record of the fact that the killing was premeditated, willful and with malice aforethought to support appellant's conviction of second degree murder.[2] Accordingly, this point is ruled against the appellant.

In another point, appellant contends that two comments made by the prosecutor during the trial constitute improper references to his failure to testify. We consider this error as requiring the reversal of the judgment, and the granting of a new trial.

The first remark was made by the prosecutor at the close of the State's case. Following the trial court's overruling of the appellant's motion for acquittal, the defense rested. At this point the following exchange transpired in the presence of the jury:

"Prosecutor: Your honor, I am a little unprepared for this. I was given a list of witnesses you [the defendant] were going to call.

"Court: I don't think you should make that statement in front of the jury."

After a discussion out of the hearing of the jury the appellant's motion for mistrial was denied, and it was stipulated that the jury would be instructed to disregard the statement. In the jury's absence the trial court admonished the prosecutor, describing his conduct as "completely out of order", without reason, and "completely uncalled for". The prosecutor agreed that his statement was improper.

The second comment was recited during the State's closing argument. Following a summary of the testimony of the State's witnesses, the prosecutor remarked:

"You should not judge Earl Robinson in talking about the Defendant. You know, if Earl Robinson was the worst person on earth, this would be no less a crime. So you know Earl Robinson is not on trial. Charles Thompson is not on trial and Roy Jenkins isn't. *There is not a single witness who took the stand who is on trial. Bryan Reed is on trial.*" (Emphasis added).

█ The defense did not object to this statement. References to the accused's failure to testify, however, which were not objected to at trial or alleged as error in a motion for new trial have been regarded as justifying the invocation of the plain error rule when such references deprived the accused of his right to a fair trial. *See, State v. Johnson*, 536 S.W.2d 851 (Mo.App.1976); *State v. Gray*, 503 S.W.2d 457 (Mo.App. 1973), *State v. Howard*, 540 S.W.2d 86 (Mo. 1976). We are of the opinion that the prosecutor's remarks infringed upon the appellant's right against self-incrimination, and warrant our review pursuant to the plain error doctrine of Rule 27.20(c).[3]

---

**2.** The jury deliberated for one half hour before requesting to review certain exhibits. Approximately four and three quarter hours later the jury was returned to the courtroom and the judge gave the "hammer" instruction. Following two and one half hours of further delibera-

tion, the jury returned a verdict finding Bryan Reed guilty of murder in the second degree. The jury thus deliberated 7 hours and 45 minutes before returning a guilty verdict.

**3.** Likewise, a reference by the prosecutor that the defendant failed to make an exculpatory

Previous analyses of this issue have been organized according to whether the comment has a direct or indirect reference to the defendant's failure to take the stand, language such as "defendant", "accused", and "testify" have been deemed crucial. *State v. McNeal*, 517 S.W.2d 187, 188 (Mo. App.1974). To constitute an indirect reference, the comment, when viewed in context, must be of a type which would cause a jury to infer that the remark was a reference to the accused's failure to testify. *State v. Hayzlett*, 265 S.W.2d 321 (Mo.1954); *Eichelberger v. State*, 524 S.W.2d 890, 894 (Mo. App.1975).

Upon the direct criterion, only a comment by the prosecutor which is a direct and certain reference to the failure of the accused to testify would be considered as satisfying the test. *State v. Hutchinson*, 458 S.W.2d 553 (Mo.1970).

The State urges that we view the prosecutor's comments as proper retaliatory remarks which were offered in response to the defense counsel's references to the veracity of the State's witnesses. The State also suggests that the comments may be classified as permissible references to the appellant's failure to present adequate evidence.

We do not agree that the remarks may be so classified. We find the following cases to be persuasive on this issue. In *State v. Shuls*, 329 Mo. 245, 44 S.W.2d 94 (Mo.1931) the challenged statement was uttered during closing argument:

> "who was there at the hold-up, gentlemen of the jury? There were three parties there and these two girls were the only ones that testified, and what did they say?"

(44 S.W.2d 94, 96)

The Supreme Court reversed the judgment entered against the defendant, and held:

> "The reference to the defendant's failure to testify could not have been more obvious had he been called by name and the

statement following his arrest has been held to be plain error requiring a new trial. *State v. Ward*, 571 S.W.2d 773, 775 (Mo.App.1978);

facts baldly [states] that he had not taken the witness stand and denied the testimony of the girls."

(44 S.W.2d 94, 97)

In the case before us, the prosecutor used the name of the accused in his indirect reference to the former's failure to testify. The comment highlighted the fact that the appellant did not take the stand, by emphasizing that Byran Reed, not the witnesses who testified, was on trial.

In *State v. Lindner*, 282 S.W.2d 547 (Mo. 1955) the challenged comment consisted of the following:

> "I don't know what this boy says. There is no evidence of any type by him in this case."

The Supreme Court construed these remarks, taken together, as being equivalent to a pronouncement that "this boy hasn't said anything in this case." The Court reversed the judgment entered against the accused, holding:

> "Except for a direct statement that 'defendant has not testified', we can conceive of no clearer way to express that idea than by the phraseology used in the instant case."

(282 S.W.2d 550)

It is our opinion that the language of the prosecutor in the present case closely resembles the conception of a direct reference articulated by the Supreme Court in *Lindner*. In its context, the statement by the prosecutor that "[t]here is not a single witness who took the stand who is on trial. Bryan Reed is on trial", could have been reasonably construed as a pointed reference to the failure of the appellant to testify. The logical inference from this statement is that the appellant did not testify. We believe this prejudiced the appellant and prevented him from obtaining a fair trial. *State v. Lindsey*, 578 S.W.2d 903 (Mo. banc 1979).

*State v. Stuart*, 456 S.W.2d 19 (Mo. banc 1970); *State v. Benfield*, 522 S.W.2d 830 (Mo.App. 1975).

In *State v. Ellinger*, 549 S.W.2d 136 (Mo. App.1977) a statement which contained summaries of the testimony of two of three possible witnesses to the crime was challenged. The defendant, the third possible "witness", had not testified. The court, reviewing the issue under the plain error rule, held that although such a comment might not constitute a direct reference to the accused's failure to take the stand, the cumulative effect of it and another improper comment resulted in prejudice to the defendant.

■ We have previously noted that the jury was advised to disregard the initial improper comment made by the prosecutor. Generally, such an instruction is deemed sufficient to cure the error. *State v. Rothaus*, 530 S.W.2d 235 (Mo.1975). This is not such a case. The cumulative effect of the two comments accentuated the fact that the appellant had not testified. As a result, a reasonable juror's attention would have been attracted to this fact.

■ It was pointed out in *State v. Barker*, 399 S.W.2d 1 (Mo.1966) that the purpose of our statute (§ 546.270) and Rule 26.08 in prohibiting any reference to defendant's failure to testify was to keep absolutely from the jury any reference to the constitutional right against self-incrimination. Missouri Constitution, Art. I, § 19, VAMS.

More recently, the Supreme Court of Missouri has held that language which focuses the jury's attention on the accused's failure to testify operates to deny the defendant of his right to a fair trial. *State v. Lindsey*, 578 S.W.2d 903 (Mo. en banc, 1979). The challenged statement which was uttered by the prosecutor during voir dire was:

"Mr. Lindsey doesn't have to go forward with any evidence if he doesn't wish to. He doesn't have to take the stand if he doesn't want to."

(supra, at 903).

The Supreme Court reversed the appellant's conviction stating:

"Article I, § 19 of the Missouri Constitution provides, in part, 'That no person shall be compelled to testify against himself in a criminal cause, . . . .'" This language prohibits not only comments on the failure of a defendant to testify . . but also comments which have the effect of compelling a defendant to testify. The use of language which has either effect must be condemned . . . [c]onduct which naturally and necessarily has the effect of denying an accused a fair trial can never be harmless."

(At p. 904)

■ We are not unmindful of the obvious difficulty the jury had in reaching a verdict. It took 7 hours and 45 minutes of deliberation, plus a "hammer" instruction before the jury finally returned a guilty verdict. It cannot be said that the very pointed reference to appellant's not testifying did not result in a manifest injustice to substantial rights of the appellant. The jury may well have considered this a close case. In a close case such an error warrants reversal. *State v. Degraffenreid*, 477 S.W.2d 57 (Mo.1972).

Accordingly, we find that the appellant's right against self-incrimination, as secured to him by Amendments V and XIV to the United States Constitution, Art. I, § 19 of the Missouri Constitution, § 546.270 (RSMo 1969) and Rule 26.08 was infringed upon.

As the judgment is reversed, and the cause remanded for a new trial, it is not necessary to address the remainder of appellant's points relied on.

Reversed and remanded for a new trial.

CRIST, J., concurs.

STEWART, J., dissents in separate opinion.

STEWART, Judge, dissenting.

I respectfully dissent. I would conclude that in the context of the argument, the State did not make a direct and certain reference to defendant's failure to testify. The argument can readily be interpreted as retaliation for defendant's attacks upon the character and veracity of the State's witnesses. I believe this case to be controlled by *State v. Rothaus*, 530 S.W.2d 235 (Mo. 1975).

I am more disturbed by the fact that we are asked to rule the issue as plain error under the circumstances of this case. It is apparent that at the time the statement was made defendant's counsel did not consider the argument to be a reference to defendant's failure to testify. He made no objection. We cannot say that he did not object because counsel did not want to bring the matter to the attention of the jury, because if it had been such a direct and certain reference to defendant's failure to testify it would not have been overlooked in the motion for new trial. That the argument violated defendant's Fifth Amendment rights is not so blatantly obvious that I would convict the trial court of error in not declaring a mistrial sua sponte in this case.